THE BOARD OF SUPERVISORS OF MILWAUKEE COUNTY VS. HACKETT and others.

CONSTITUTIONAL LAW : *Sec. 26, Art. IV, state constitution—Increasing or diminishing compensation of public officers.—Five per cent. on delinquent taxes—sec. 2, ch. 26, Laws of* 1861.*—Account stated—Pleading.*

1. Sec. 26, Art. IV of the constitution of this state (which declares that the compensation of any public officer shall not be increased or diminished during his term of office) applies only to officers who receive a fixed salary from the public treasury of the state.

2. Under sec. 2, ch. 26, Laws of 1861, the five per cent. collector's fees on delinquent lands returned to the county treasurer, belong to the county, and not to the treasurer.

3. A county treasurer, authorized to sell county bonds in his hands, to pay certain expenses, under the instructions of a committee of the board, sold without such instructions more than were necessary to pay such expenses. *Held,* that he must account to the board for the amount of the discount on the bonds sold without authority.

4. In an action on a county treasurer's bond, brought by the district attorney in the name of the board of supervisors, the question of his authority to bring the suit as to particular causes of action set up in the complaint, can be raised only by pleading in abatement want of such authority, or by motion for an order requiring him to show his authority, &c.

5. In such an action, where it appeared (and the answer alleged) that the board of supervisors had examined the treasurer's account, and had objected only to certain specified items entered to his credit, and instructed the district attorney to bring suit for the amount thereof: *Held,* that there was no account stated between said board and the defendant, and nothing to show that the suit as to such additional items could not be maintained.

APPEAL from the Circuit Court for *Milwaukee* County.

The defendant was treasurer of Milwaukee county from the first Monday of January, 1863 to the first Monday of January, 1865. This action is against him and the sureties on his official bond, for alleged breaches thereof in not paying over to his successor in office the full amount of moneys in his hands belonging to the county (the alleged deficit being about $8000), and in converting to his own use thirty-seven bonds of said city for $130 each, deposited with him as such treasurer.— The only answer contained in the printed case was a general

denial. It appears, however, that there was another answer filed, which, after denying the chief averments of the complaint, alleged as a separate defense, that the defendant, on or about the 1st of January, 1865, delivered to the board of supervisors " a full account in detail, of all moneys which came to his hands as such treasurer during the year 1864, and of all disbursements made by him," which was referred to a committee of the board for examination; that after a full examination thereof and of said treasurer's books, the committee (about the 3d of February) made a report in writing to the board, " approving all of said account, and not objecting to any charge or credit therein, except that it objected to all of the charge against the county for commissions on bounty fund received and paid out in excess of $1000, and also to the sale of any of said bonds except for the purpose of paying the expenses incidental to and necessary to carry into effect the act authorizing the issue of said bonds; which report was then and there approved and adopted by said board of supervisors; and that said committee and said board, after full consideration and examination of [defendant's] accounts for the year 1864, heretofore, to wit, on the 3d day of February, 1865, settled, approved and consented to the correctness of the same, and each and every item and particular thereof, except the items above mentioned."

It appeared from the evidence, 1. That on the 11th of January, 1865, the board of supervisors appropriated to defendant, $1000, " in full compensation for all fees and services performed under and by virtue of an act entitled ' An act to empower the county of Milwaukee to raise money for the payment of bounties to volunteers, approved February 15, 1864.' "*

---

* Sec. 9 of said act (ch. 42, Gen. Laws of 1864) provides that " the board of supervisors shall have power to regulate the compensation which shall be paid the county treasurer for all the duties he may perform under this act, but said compensation shall not exceed one thousand dollars."

2. That defendant received from the clerk of the board 1538 bonds of the county issued under said act, each for $130, making the aggregate amount $199,940 ; that he was authorized by resolutions of the board to deliver such bonds instead of money to volunteers entitled to bounty ; and also to sell a sufficient number of them "to cover all expenses accruing from time to time on the same," under the supervision of the select committee on bounties and of the chairman of the board ; that in his account rendered as aforesaid, he credited himself with the following items :

| | | |
|---|---:|---:|
| Total amount of bounty bonds delivered to volunteers........ | $192,140 | 00 |
| Total amount of bounty bonds sold to pay expenses of issuing the same .......................................... | 6,630 | 00 |
| Total amount of bounty bonds delivered to successor in office.. | 1,170 | 00 |
| Total amount of accounts paid out of bounty bond fund ...... | 1,721 | 91 |
| Treasurer's commission at 1 per cent. on $199,940 receipts—being total amount of bounty bonds received by him in lieu of and as money.......................................... | 1,999 | 40 |
| Treasurer's commission at 1 per cent. on $198,770 disbursements—being total amount of bounty bonds paid out by him in lieu of and as money.................................... | 1,987 | 70 |

3. That thirty-seven of the bonds were sold by defendant at $111 each, mainly to pay his commission as charged in the two last of the above items, and without consulting the committee. 4. That after defendant's account was presented to the board, the committee to which it was referred reported that the sale of the thirty-seven county bonds was without authority, except as to $1,000 worth thereof; and that the charges of $1,999.40 for receiving the county bonds, and $1,987.70 for disbursing them, were erroneous ; and this report was adopted by the board together with a resolution directing the district attorney to sue the defendant "for the recovery of moneys detained from the county  *  *  as set forth in the foregoing report." It further appeared, 5. That defendant had not charged himself with $1,041.80, received under sec. 2, ch. 26, Laws of 1861, being five per cent. on the delinquent tax lists returned to him by town, city and village treasurers.   6. That

he had charged a commission of one per cent. on certificates of sales of land *to the county* for delinquent taxes, amounting to $13,296, as upon so much money received into the treasury.

The plaintiff appealed from a judgment of nonsuit.

*Palmer & Hooker,* for defendants, contended that as the board of supervisors, which is authorized to settle with the treasurer (R. S., ch. 13, secs. 27, 46), and cause his bond to be put in suit if its condition has been broken (R. S., ch. 13, sec. 136), had disapproved only of certain specified items in the treasurer's account, and directed them to be litigated, no other matters could properly be included in the complaint.    2. That the compensation of defendant for the duties performed by him in receiving and disbursing moneys as such treasurer, was fixed by secs. 134 and 135, ch. 13, R. S., when he entered upon his term; and by sec. 26, Art. IV of the constitution they could not be increased or diminished during the term.    *Connor v. Mayor of N. Y.,* 1 Seld., 285, 294; *Palmer v. City of N. Y.,* 2 Sandf., 318, 323; *Hatch v. Mann,* 15 Wend., 44; *Massing v. The State,* 14 Wis., 502; *Jones v. Sup'rs Grant Co.,* id., 518; *People v. Burroughs,* 27 Barb., 89; *Havard v. The State,* 10 Ind., 99.    3. That the amount charged for commissions on the bounty fund, being a just and legal charge, was a part of the expenses of executing the bounty law, the payment of which out of the proceeds of the bonds is expressly provided for in sec. 6, ch. 42, Laws of 1861, and by the resolution of the board of supervisors.

*J. P. C. Cottrill,* District Attorney for Milwaukee county (with whom was *J. Stark,* of counsel), contended:    1. That sec. 26, Art. IV. of the constitution applies only to *salaried* officers.    2. That it applies only to compensation for services ordinarily pertaining to any office, and not to extraordinary duties imposed upon an officer in view of some special exigency, as in the present case.    3. That if defendant's compensation is to be governed by secs. 134 and 135, R. S., the commissions charged upon the bounty bonds were unauthorized, inas-

much as most of them were not in fact sold, and no "moneys" were "received and paid out by him as treasurer" in connection with such bonds. 4. That if the bonds had actually been sold, he would have been entitled to only one half the commission charged, sec. 134 providing that " on moneys arising on sale of lands *and other property* belonging to the county, * * he shall receive only one half the above fees for receiving and paying out the same." 5. That it was not necessary to show that the board of supervisors formally directed this action to be brought to recover the five per cent. and the illegal commissions other than upon bounty bonds. The authority of the law officer of the county to prosecute the suit must be presumed as between these parties. There is nothing in the case to negative the fact of full instructions by the board. 6. The board has no power to bind the county by the allowance of an unlawful claim. *Brainard v. New London*, 22 Conn., 552; *Brady v. New York*, 2 Bosw., 173; *McSpedon v. N. Y.*, 20 How. Pr. R., 395; *Wolcott v. Lawrence Co.*, 26 Mo., 272. Money illegally paid by a municipal corporation may be recovered back in an action for money had and received. *Trumbull v. Campbell*, 3 Gilman, 502; *Petersburg v. Maffin*, 14 Ill., 193; *U. S. v. Yale Todd*, 13 How. (U. S.), 52 (n). Mistakes in settlement with a county treasurer may be corrected. *Washington Co. v. Parlier*, 5 Gilm., 232; 8 Allen, 371; 4 Wend., 453.

DIXON, C. J. I think the word " compensation," as used in section 26, Art. IV. of the constitution, signifies the return for the services of such officers as receive a fixed salary payable out of the public treasury of the state; and that it does not, and was not intended to, apply to the remuneration of that large class of officers, such as sheriffs, constables, clerks of courts and others, who receive specific fees for specific services as they are from time to time required to render them. The

gross annual compensation of such officers is always uncertain and fluctuating, and the receipts during one term of office, or portion of a term, as compared with those of another, may be and often are largely increased or diminished. The conclusion that it was not the intention to restrict the power of the legislature as to the compensation of officers of this class, is so obvious to me from the very context, and the opposite construction would produce such great and manifest public inconvenience, that I cannot make it plainer by any mode of reasoning which I can adopt. I think the limitation applies only to those salaried officers paid by the state, and not to those minor ones who, according to the usual course of public business, are paid by fees taxed or allowed for each item of service as it is rendered. The treasurer of a county is such an officer, and I do not doubt that it is competent for the legislature to increase or diminish his fees or commissions during his term of office, or to fix the amount which he shall receive for any new service which may be required of him by law. It was competent for the legislature to authorize the board of supervisors to regulate the compensation to be paid to the treasurer of Milwaukee county for all duties performed by him under the act to raise money to pay bounties to volunteers, and to provide that such compensation should not exceed one thousand dollars. Laws of 1864, ch. 42, sec. 9. Understand the limitation of the constitution to apply to such an officer, and I do not see but it would destroy the claim of the treasurer entirely for any compensation for services rendered under the act. The limitation is, that the compensation shall not be *increased*, as well as diminished. The compensation of the treasurer was certainly increased by the one thousand dollars over and above what it would have been had the act not been passed and the additional services required. I think he can claim and retain the one thousand dollars, and no more, from the county.

The five per cent. collector's fees on lands returned delin-

quent to the county treasurer, belongs to the county. The statute makes this as clear as language can, when it declares that it "shall be collected by the county treasurer in the same manner as other delinquent taxes are collected, and paid into the county treasury for the use of the county." Laws of 1861, ch. 26, sec. 2.

Whether the district attorney can prosecute this action to recover back the five per cent. collector's fees, without the authority of the board of supervisors, is not a question here presented. That is a matter in abatement, to be brought before the court by answer; or by special motion or order for the district attorney to show by what authority he prosecutes that claim, and, if it appear that he has none, to dismiss the action as to that cause. It is not an objection which can be raised or put in evidence before the jury on trial of the general issue, or mere denial of the allegations of the complaint.

I think the judgment should be reversed, and a new trial awarded.

*By the Court.*—Ordered accordingly.

On a motion for a rehearing, the counsel for defendant insisted that every person who is appointed to discharge a public duty, and receives a compensation therefor, whether from the treasury of the state or otherwise, is a "public officer" (*Hurly v. Mayor of Linn*, 5 Bing., 91; *People v. Hays*, 7 How. Pr. R., 248; 11 id., 240; 5 Bac. Abr., 180; 7 Bac. Abr., Phil. ed. of 1860, p. 280; *People v. Bedell*, 2 Hill, 196; *Case of Daniel Wood*, 2 Cow., 29, note; *Dean v. Gridly*, 10 Wend., 255); that the "compensation" of a public officer means any reward or remuneration for his services; and that the framers of the constitution must be supposed to have used these words in their ordinary signification. *Attorney General v. Brunst*, 3 Wis., 787; Sedgw. on Stat. and Con. Law, 227; Smith's Comm., § 513. Counsel also called the attention of the court to the answer as

found in the record, as raising the question of the right of the district attorney of Milwaukee county to prosecute this suit for any items therein shown to have been approved by the supervisors.

COLE, J.   On the motion for a rehearing we have been strongly urged to review the decision above made, and to recede from the views there expressed.   But we are entirely satisfied with the construction placed upon the provisions of the constitution there considered, and think it the only one which the context will sustain.

In regard to the question whether the district attorney was authorized to sue for the five per cent. collector's fees, the aspect of the case is not changed by the matters contained in the answer to which our attention is called.   The answer does not contain any averment that the district attorney was not authorized by the board to prosecute as well for the five per cent. as any other sum.   It states, in substance, that *Hackett* made and delivered to the board a statement *of all* his receipts and disbursements as county treasurer, and that this account as to certain items was examined, approved and settled by the board.   But it further shows that there were other important charges in the account which were not settled, and the correctness of which was contested by the board.   The account as rendered by Hackett was not acquiesced in by the board.   And we think it very clear that it never was settled and accepted by the parties so as to become an account stated.   The board objected to certain items as rendered, and the treasurer never admitted that it was correct and binding upon him as corrected by the board.   . So we suppose the account must still be treated as an open one.

There are one or two other items in this account upon the justness and legality of which our opinion is desired.

First, whether the treasurer was entitled to a commission of

one per cent. upon the tax certificates. We think he was not. The tax certificates issued by him to the county at the tax sale were not, in any sense of the word, moneys received or paid out by him. The commission on them must therefore be disallowed.

The treasurer must likewise account for the par value of all bonds sold by him which he was not authorized to sell by the resolution. It is claimed that he sold a number of bonds, at a discount of $19 on each bond, more than were necessary to pay the legitimate expense connected with the business relating to the bonds. If so, he should account to the county for the full face of all such bonds, since they are worth to the county that much, and were disposed of by the treasurer without authority.

*By the Court.*—The motion for a rehearing is denied.