JANUARY TERM, 1873.          403

State ex rel. Grundt and others vs. Abert.

STATE ex rel. GRUNDT and others vs. ABERT.

CONSTITUTIONAL LAW. (1) *General rule as to statutes.* (2) *Unity and uniformity of county government — Const. of Wis., art. IV., sec. 23.* (3) *Ch.* 509, *P. & L. Laws of* 1868.

1. Courts will not hold an act of the legislature unconstitutional unless it is clearly so.
2. An act which destroyed the *unity* of the system of town and county government, or which unnecessarily interfered with its *uniformity* in any *material* respect, would be invalid under sec. 23, art. IV. of the state constitution. *State ex rel. Peck v. Riordan* (24 Wis., 484), and subsequent cases in this court on that point, considered.
3. Under the general laws of this state (R. S., ch. 34, secs. 32–39), the board of supervisors of any county has the power to appoint three superintendents of the poor, and to remove them at pleasure. Ch. 509, P. & L. Laws of 1868, provides for the election *by the people* of Milwaukee county of *one* superintendent of the poor of that county, who may be removed from office by the board of supervisors *for cause.* *Held,* that the latter act is valid, and not in conflict with the constitutional provision above cited.

This is an action of *quo warranto*, commenced in this court, to test the right to the office of superintendent of the poor in the county of Milwaukee.

The plaintiffs and relators claim the office by virtue of an appointment thereto by the board of supervisors of that county, pursuant to the general law on that subject found in the R. S. of 1858, ch. 34, secs. 32 to 39. The defendant is in possession of the office by virtue of an election thereto under the provisions of Pr. and Local Laws of 1868, ch. 509.

The complaint concedes that if the act of 1868 is a valid law, the defendant is entitled to hold the office; and it contains the necessary averments showing that if such act is invalid the relators are entitled to the office.

The defendant demurred to the complaint on the ground that it failed to state facts sufficient to constitute a cause of action.

*Fred. Rutbrock* (with *M. H. Finch*, of counsel), for the relators, relied on the decisions of this court in *The State ex rel. Peck v. Riordan*, 24 Wis., 487; *The State ex rel. Keenan v. The Supervisors of Milwaukee Co.*, 25 id., 346, and *The State ex rel. Walsh v. Dousman*, 28 id., 541.

*Carys & Cottrill*, for respondent, argued that the act of 1868 made no change in the general powers of the county supervisors, but merely in some of the details of management; that a great difference in the details of management in different counties was already provided for by the general law (R. S., ch. 34), the constitutionality of which has not been questioned; that such differences are contemplated as admissible in the constitutional provision and the former decisions of this court, cited for the relators, and are sanctioned by the decision in *Kennedy v. McGarry*, 21 Wis., 496 : and that the passage of the act of 1868 was a legislative determination that a greater uniformity between the management of the poor in Milwaukee county and their management in some of the other counties, was not *practicable.*

LYON, J. The demurrer to the relation or complaint raises the single question, whether the provisions of the act of 1868, by virtue of which the defendant claims that he is entitled to the office in controversy, contravenes that provision of the constitution which ordains that " the legislature shall establish but one system of town and county government, which shall be as nearly uniform as practicable." Art. IV., sec. 23.

The objects and scope of this provision are quite fully discussed in the cases of *State ex rel. Peck v. Riordan*, 23 Wis., 484; *State ex rel. Keenan v. The Supervisors of Mil. Co.*, 25 id., 339; and *State ex rel. Walsh v. Dousman*, 28 id., 541. The principle to be deduced from these cases is, that an enactment which destroys the *unity* of the system, or which unnecessarily interferes with its *uniformity* in any material respect, is not a valid law. The " system " which we are to consider in this case, is

the plan of supporting public paupers by counties, instead of doing the same thing by towns, cities or villages. Surely the act of 1868 does not destroy or affect the *unity* of such system. The county system of supporting paupers still remains in the county of Milwaukee, and the act of 1868 does not attempt to destroy or impair it.

But the question remains, Does that act unnecessarily interfere with the *uniformity* of the system in any material respect? The points of difference between the act of 1868 and the general law on the same subject (R. S., ch. 34, secs. 32 to 39), to which our attention has been directed by the counsel for the relators, are, that the act of 1868 provides for the election by the people of *one* superintendent of the poor in Milwaukee county, who may be removed from office by the board of supervisors for cause, while, in the absence of that act, and under the general laws, the board of supervisors of Milwaukee or any other county has or would have power to appoint *three* superintendents of the poor, and to remove them at pleasure.

Absolute uniformity is not required by the constitution, but only that the system of town and county government shall be as *nearly* uniform *as practicable.* Unless (as in the cases above cited) we can say that the act of 1868 breaks the unity of the system, or unnecessarily disregards the rule of uniformity in some material particular, we must hold the act valid. We have already said that the act does not impair the unity of the system. We are unable to say that it interferes with or contravenes the rule of uniformity prescribed by the constitution. The alleged restriction therein upon the power of removal is too trifling and unimportant to merit serious consideration. The change in the number of superintendents is also a matter of minor importance. We cannot say, as a legal proposition, that the situation of Milwaukee county in relation to the support of its paupers was not such, that it was impracticable to entrust that business to three superintendents. And could we say this, it is not easy to perceive how the uniformity of the general sys-

tem could be materially disturbed by such change. The only provision in the law of 1868, which at first view might seem to be an innovation upon the general system, is that which deprives the board of supervisors of the power to appoint the superintendent. But inasmuch as the power of such board over the pauper affairs of the county, and over the superintendent and his assistants, is as ample and complete as it would be under the general law, we are of the opinion (and so hold) that the change in the mode of choosing the superintendent does not affect the uniformity of the system, at least, it does not affect the same in any material respect, or in any manner prohibited by the constitution.

The courts will not hold, and ought not, that acts of the legislature are unconstitutional, unless they are clearly so. If there is room for reasonable doubt, the validity of the act should be asserted and sustained. Applying this rule to the act of 1868, we are entirely unable to say that the act contravenes the provision of the constitution under consideration. We must therefore hold that the act under which defendant holds the office in question is a valid law, and that he is entitled to such office.

*By the Court.*—The demurrer to the complaint is sustained, and the defendant must have judgment thereon.